

# THE ATTORNEY GENERAL
# OF TEXAS

AUSTIN, TEXAS 78711

**CRAWFORD C. MARTIN**
**ATTORNEY GENERAL**

August 28, 1970

Dr. Herbert McKee
Chairman
Texas Air Control Board
1100 W. 49th Street
Austin, Texas

Opinion No. M-665

Re: Authority of the
Attorney General and
local governments to
institute legal ac-
tion based solely on
a violation of Texas
Air Control Board
rules, regulations,
variances or orders.

Dear Doctor McKee:

Your inquiry is whether the Attorney General's office, after request from the Texas Air Control Board, is author-ized to institute legal action based on a violation of Texas Air Control Board rules, regulations, variances or orders. You also ask whether local governments are authorized to in-stitute like actions. Our answer to both inquiries is "yes". Our discussion will deal with the Attorney General's authority, but the same reasoning applies to local govern-ments' authority.

The pertinent law involved in your inquiry is the Texas Clean Air Act, Article 4477-5, Vernon's Civil Statutes (1969). The regulations involved are Texas Air Control Board Regulations I, II, III, IV, and V, adopted pursuant to Section 3.09 of the Texas Clean Air Act. The rules brought into issue are the Procedural Rules, General Provisions, and all other Texas Air Control Board rules adopted pursuant to Section 3.09. The variances in question are those granted by the Board under authority of Section 3.21; and the or-ders to be considered are those made by the Board under authority of Section 3.12 of the Texas Clean Air Act.

The question answered here arises because of the lan-guage of the prohibitive provision of the Texas Clean Air Act, Section 4.01, and the definition of "air pollution" found in Section 1.03(3). "Air Pollution" is defined as ... "the presence in the atmosphere of one or more air contami-nants or combinations thereof, in such concentration and of

such duration as are or may tend to be injurious to or to adversely affect human health or welfare, animal life, vegetation or property, or as to interfere with the normal use and enjoyment of animal life, vegetation or property". Thus, to prove "air pollution" it is necessary to prove injury, adverse effect or interference with property use or a tendency thereto caused by the air contaminants.

This is significant because Section 4.01(a) says that no person may cause, suffer, allow or permit the emission of air contaminants ... which causes or contributes to ... a condition of "air pollution". Consequently, in order to prove a violation of Section 4.01(a), it is necessary to prove "air pollution", which requires proof of injury or a tendency to injure or to adversely affect, etc.

However, this proof is not required in a case brought under Section 4.01(b). This section prohibits any person to cause, suffer, allow or permit the emission of any air contaminant...in violation of the Act or any rule, regulation, variance or other order of the Texas Air Control Board. The Board's rules, regulations, and orders are valid so long as they are based upon the concept of prevention, abatement, and control of "air pollution", as that term is statutorily defined.

Section 4.02(a) authorizes the Air Control Board to cause a civil suit to be instituted whenever it appears that any person has, is, or threatens to violate the Act or any rule, regulation, variance or other order of the Board. And Section 4.02(b) authorizes such suit to be brought for the Board by the Attorney General.

In the recent case of Houston Compressed Steel Corp. d/b/a Byer's Barge Terminal v. The State of Texas, (Tex. Civ. App., Houston, June 25, 1970, Motion for Rehearing Overruled July 23, 1970),* the Court held that the Board is entitled to an injunction against outdoor burning (Regulation II) "without the necessity of proving toxicity or injury or harm of any kind. Outdoor burning without a variance is all that need be proved." In answer to a point

---

*  This case has not yet reached publication in Southwestern Reporter.

Dr. Herbert McKee, page 3 (M-665).

of error that the definition of "air pollution" in the Act
was inadequate and that the flat prohibition against out-
door burning provided in Regulation II was too vague to ap-
ply, the Court said at page 8 of its opinion:

> "Until 1967 the basis of our laws regarding,
> pollution was the nuisance doctrine, but the
> emphasis of our newer statutes is on regula-
> tory standards. The science of air pollution
> control is new and inexact, and these stand-
> ards are difficult to devise, but if they are
> to be effective they must be broad. If they
> are too precise they will provide easy escape
> for those who wish to circumvent the law."

The Court expressly reviewed the definition of "air pollu-
tion" and pronounced it "clear and easily capable of
understanding."

If the Board did not have authority to proceed in
court to prevent violations of their rules, regulations,
variances, or orders, such rules, regulations, etc., would
be meaningless, empty pronouncements. The Houston Court
recognized this in saying, at p. 4 of its opinion:

> "The Board has no enforcement power of its
> own. The only effective means of securing
> compliance with the Act is by instituting
> suits for injunctions or penalties or both.
> Sec. 4.02(a) provides that the district
> court is the proper forum for enforcing the
> Act and the Board's orders." Houston
> Compressed Steel Corp. d/b/a Byer's Barge
> Terminal v. The State of Texas, supra.

This is not to say that the Texas Air Control Board
should not make orders and determinations, or that when
made, such orders are meaningless; but it is to say that
once made, such orders can be enforced only by the Courts
of the State. And, as in a suit based on a regulation vio-
lation, the only issue for decision by the Court in a suit
based on an order violation is whether or not the defendant
violated the order. There is no issue of intentional or
willful violation unless the statute makes such an ingredi-
ent of the cause of action. State v. Harrington, 407 S.W.

2d 467 (Tex. Sup. 1966). The order, like a regulation, is presumed valid if made within the scope of authority legally delegated. Pacific State Box and Basket Co. v. White, 296 U.S. 176, 185, 186, 56 S. Ct. 159, 80 L.Ed. 138, 101 A.L.R. 853 (1935); Thompson v. Consolidated Gas Utilities Corporation, 300 U.S. 55, 69 (1937).

By this opinion, we should not be understood as saying that nuisance evidence or evidence of injury or harm is no longer valid or helpful evidence. It is valuable evidence, because experience with courts and juries has taught that much stronger judgments and penalties can be obtained by enforcement agencies when the very human element of nuisance evidence is incorporated into an air pollution suit. Such evidence may likewise become important when the defendant has attacked the validity of the Board's order or regulation and adduced evidence, if believed, which would be sufficient to sustain a finding and judgment that the order or regulation was not based upon the concept of prevention, abatement, and control of air pollution. However, that type of evidence is not an essential ingredient of a cause of action for violation of a valid rule or regulation.

We have, therefore, answered the first question in the affirmative. The answer to your question concerning local governments' authority is also affirmative, because Section 4.03 of the Act authorizes local governments to institute suits "in the same manner as the Board". This statutory language makes local governments agents of the State performing governmental functions. Harris County v. Ideal Cement Co., 290 F.Supp. 956 (S.D.Tex. 1969).

## SUMMARY

The Attorney General, upon request of the Texas Air Control Board, is authorized to institute legal action based solely on a violation of Texas Air Control Board rules, regulations, variances or orders. A local government has the same authority to institute legal action without Board approval.

Dr. Herbert McKee, page 5 (M-665).

Very truly yours,

CRAWFORD C. MARTIN
Attorney General of Texas

Prepared by Richard W. Chote
Assistant Attorney General

APPROVED:
OPINION COMMITTEE

Kerns Taylor, Chairman
Bill Allen, Co-Chairman

Tom Bullington
Mel Corley
Fisher Tyler
Ray McGregor

MEADE F. GRIFFIN
Staff Legal Assistant

NOLA WHITE
First Assistant